11-0-6 CREA v. CITY OF HOPE 11-0-6 CREA v. CITY OF HOPE  11-0-6 CREA v. CITY OF HOPE 11-0-6 CREA v. CREA So I think the HIF file case before this court, the 2010 decision, was a mixed case involving two claims which depended on patent law and nine claims state law claims. And the court, in looking at the state law claims, focused on an unjust enrichment cause of action. This is at the end of the opinion on 13-59-60. And the court said, in facts that are very similar to this case, that the plaintiff, this is for unjust enrichment, the plaintiff alleged experiments, pre-publication experimental data, drafts of papers that were to be published in addition to patents as constituting the property that was taken by the plaintiff and for which compensation was sought. This court held that although the patent issue could be relevant, it was not essential to the claim and the entire claim, and not just the patent law part, must be remanded under Christensen. And the same issue applies here. The papers in the record about Dr. CREA's accomplishments and contribution, and there are five of them that we cited, all the authors are Itakura, Riggs, and CREA. They are replete with experiments and data in the DNA synthesis project, rapid synthesis of oleodeoxyribonucleotides. Doesn't all of that go to whether or not he should be listed as an inventor? It goes to everything. It goes to whether he should be named as an inventor, it goes to the contribution of the CREA reagent patents, and it goes to the contributions, know-how. I'm not sure I understand the claim about the CREA reagent patents and how that would entitle him to any share of royalties paid on the Riggs-Itakura patents. Every patent is entitled to its own royalty base. I don't understand how these separate patents could be a basis for entitlement to a royalty agreement on different patents. Perhaps he should be able to get a royalty fund on the CREA patents, but I don't see how that gives him a share of the money attributed to the Riggs-Itakura. The licenses at issue, many of them, are not patent licenses. Those licenses, some of them in the record, Eli Lilly, Hoffman LaRoche, several others. You look at those agreements, they are not patent licenses. They don't specifically cover some patents and not others. They enable the licensee, in the case of Hoffman LaRoche, for example, to produce, manufacture, sell, and sub-license products made through synthetic methods, technical know-how, breakthroughs, improved methods of synthesizing, in addition to patents, complete license. The lawyer at Genentech, who drafted those licenses and negotiated them, expressly said they are not patent licenses. The money flowing through doesn't just go to Riggs-Itakura Patent A, but it goes to the entire body of technology. I may not be understanding your argument, so I want to give you a chance to enlighten me. Because I understood that the royalty payments that Genentech paid were for the sale of proteins to third parties, and didn't the contract between Genentech and CREA specifically reference the royalties being paid for the Riggs-Itakura patent? Am I misremembering that? The contract between Genentech and City of Hope? Yes. The contract between those two entities is a development of inventions and discoveries and know-how and technology at City of Hope, expanded into a patent portfolio, and licensed all of the technology, not just the patents. Any royalties that Genentech receives, or revenues from the sale of its own products, as a result of the joint development work, goes into a pot and royalties are shared with City of Hope. City of Hope, in turn, has two policies at issue, where respective research scientists, of which CREA was one, can share in royalties received by the institution from work that they did. But his CREA patents are when he's at Genentech. His CREA patents were conceived at City of Hope. They were prosecuted under the agreement, as appropriate, by Genentech. He is now a chemist at Genentech when those actually get issued, but they relate. But that's my point. Why would Genentech be paying the City of Hope for, supposedly, some portion of the royalty payment would be for the CREA patents, which Genentech itself owns? It doesn't make sense to me. Genentech owns these patents. Mr. CREA is at Genentech when he prosecutes these patents, when he conceives of this idea, everything. So why would... You say he conceived of it. They weren't conceived at Genentech. They were conceived at City of Hope. City of Hope has no claim to these patents. They've expressed no claim over these patents. I beg to differ with that. If a CREA reagent patent conceived at City of Hope, it does not matter whether Genentech prosecuted those patent applications. They were supposed to. They were supposed to. It's assigned to Genentech, under the agreement. But there's a bunch of patents assigned to Genentech by the inventor who was employed by Genentech. Why would any portion of the royalty that Genentech is paying... I mean, they didn't get this assignment from City of Hope, right? City of Hope didn't assign to Genentech its rights in the CREA patents. City of Hope transferred to Genentech the right to prosecute patents that it saw fit, including those, and especially those that arose out of the DNA synthesis work at City of Hope. Patent applications, as we all know, can get filed later, prosecuted. There are continuations of all types. It does not matter for revenue purposes, Your Honor, whether the application was filed in the name of City of Hope or Genentech or who the eventual assignee is, as long as the technology that's covered was developed at City of Hope and the CREA reagent patents were developed and conceived at City of Hope. The fact that they get prosecuted later is not determinate to whether royalties are paid. So, in a hypothetical, if money is received in part for those reagent patents, Genentech had a duty to pay a share of royalties to City of Hope. Ergo, Dr. CREA would be entitled to his share of royalties for his contribution under both the 1972 policy and the 1983 policy. A couple of cases follow Christensen that I think are appropriate in addition to HF Bio. The AT&T case versus Integrated Network Corp. The contract issue there was when inventions were conceived. And this court held that while patent conception is obviously a question of patent law, the term could have both patent and general law meanings in the context of a contract that had that term. The court held that since patent issues were not necessary to determine each AT&T claim, a substantial question of patent law was not present. And AT&T and HF Bio are the closest cases to the fact pattern we had before. The two other cases that are appropriate to look at here, cited in our reply brief, are Board of Regents versus Nippon. It's in the reply brief at page 11. And Bonziel versus Pfizer, reply brief at pages 11 and 12. And those cases stand for the proposition that if one of several theories of liability can support a ruling in favor of the plaintiff without looking to a substantial, without having to determine the substantial question of patent law, subject matter jurisdiction is not present. And the cases that this court has considered apply that. We have a case here, and I think it's multiple theories. I think it's closest to the HIF Bio case on Justin Richland. Why don't we reserve the rest of your time for review. Thank you, Your Honor. Good morning, Your Honor. Joseph Lifner of Irela Manila for Defendant's City of Hope. May it please the Court. The jurisdiction question that Your Honors have talked with counsel about presents a straightforward legal question that's determined by the undisputed facts in the record. The legal question is, does CREA assert a claim which necessarily requires resolution of the question of whether he should have been an inventor on the Riggs-Itacura patent? The answer to that, based on the undisputed facts in the case, is yes. Perhaps I could turn first to Judge Moore's hypothetical and address that, if I may. I think the answer, as we sort of heard from counsel, is a plaintiff cannot defeat jurisdiction through asserting a sham theory. That would be the height of artful pleading, which the courts have disapproved. And there are a number of cases that hold that. I don't think it's just a question of policy, but there are a number of cases that the court can look at where the court did look at the substance of the claim and said, this is not a real theory. One of those cases, for example, is HIF-BIO, which CREA relies upon. In HIF-BIO, one of the claims that the plaintiff was asserting was that he wanted to litigate the issue of common law state court inventorship. And he said, that is enough of a theory. Don't look at the substance of the theory, but that should get me back to state court. The courts and this court had no trouble in saying there is no such thing as a state common law inventorship claim, and that cannot get you out of federal court or federal jurisdiction. Which comes out of the flip side of Bell v. Hood. I mean, the notion underlying Bell v. Hood is if you have a totally frivolous assertion of a federal claim, you can't get into federal court. You're out on jurisdictional grounds, even though it's actually looking at the merits of the claim, but it's a jurisdictional challenge. I think that that's exactly fair, Your Honor. That if otherwise, it would be so easy for any plaintiff to get out of federal court by saying, I assert my claim under federal court claim and also under the California state theory that the moon is made out of green cheese, and therefore, we should be in state court. So moving from that question before us, why are these three contract assertions different claims as opposed to different theories? Yes, Your Honor. And that is what we have to decide. That is a central question, and I would say that the district court got it exactly right. One easy way of looking at the question and asking the question is, does CREA's claim for relief, which is Christensen's language, does the claim for relief that CREA is making require the resolution of a federal question? And there is no question in this case that a major point, in fact, as an aside, and in the real world, the only point, but let's put that to the side for now, but a major point of CREA's lawsuit is his attempt to recover a portion of, say, the $475 million that City of Hope recovered in royalties from Genentech in 2008. That's a centerpiece of his claim. You can see it from the complaint and from his briefing. And CREA cannot get to a resolution of that claim without litigating the inventorship issue because the record is crystal clear that those monies, which were created by a royalty claim in a California state lawsuit that can be judicially noticed and was judicially noticed by the district court, was solely and only about City of Hope's rights under the Riggs and Ida Cora patents. And your honors can see that from the Court of Appeal opinion in California State Court, which is in the appendix on page 401, which describes the issues in the case quite clearly, including the two issues were did the agreement require Genentech to pay royalties on the product sales of licensees of the Riggs-Ida Cora patents? And the answer to that was yes. And then a little farther down, impliably the jury agreed with City of Hope that royalties are due on the sale of products listed in a license of the Riggs-Ida Cora patents. The judicial proceedings in California were an open book. It was all about a royalty claim under the Riggs-Ida Cora patents. There is not a shred of evidence. In the record that that, or in fact any of the monies, had anything to do with the CREA patents or know-how. And in fact the record refutes that. So even just from the complaint, the basis of CREA's claim, and the judicially noticed records of the California courts, you can tell that CREA is seeking a share of Riggs-Ida Cora patent royalties. Not CREA royalties, not know-how royalties, but he's seeking the Riggs-Ida Cora patent royalties. I'll make the point also that the California Supreme Court, in affirming the liability judgment, made the same characterization of the claim as relating to the Riggs-Ida Cora patents at 43 Cal 4 at page 385. And tellingly, fairly early in the process, the district court gave Dr. CREA and his counsel an opportunity to disclaim any claim for royalties under the Riggs-Ida Cora patents. And said, are you willing to give up that claim and proceed only on the so-called state court claims? And tellingly, CREA did not agree to do that. And that's at page 797 to 799 and 802 to 803. And the reason is clear. In reality, there are no other claims in the real world. All of this talk about the CREA patent royalties and the know-how royalties were forms of artful pleading in order to try to avoid federal jurisdiction. Well, but are you really relying entirely on the notion that there are really no other claims of substance? Or are you arguing, as I had understood you to be arguing, that these three contract theories are really different claims as opposed to different theories in pursuit of the same relief, which would make them three theories that are part of a single claim? I understood you to be making that argument as well. I appreciate the clarification. I think I was getting a little carried away with pointing out that there were no other claims. But absolutely, the court, the district court below, and we, for purposes of our argument, are absolutely willing to assume, for the sake of argument, that there is such a thing as a claim to the CREA patent royalties or a claim to the know-how royalties. But these are, in fact, separate claims because they don't touch the large portion of Riggs-Itacura patent royalties that plaintiffs seek to recover. And all of those three issues also present different questions for resolution. The Riggs-Itacura patent royalties ask the question of whether he should have been an inventor on the Riggs-Itacura patents. The CREA patent royalty claim raises a lot of the questions that Judge Moore raised. What does that have to do with City of Hope? Is it a basis for the relationship between City of Hope at all? In fact, the CREA patents, one fact I'll mention, is that they not only issued when CREA was at Genentech, but they were filed when CREA was at Genentech, too, I believe in December of 1978. So it's far from clear that the CREA patents have anything to do with the City of Hope-Genentech relationship as opposed to Dr. CREA being at Genentech. That would be a set of facts that would have to be litigated for the CREA patent claims. And then finally, the know-how claims would present their own issue. Was there valuable know-how? Was it used? Did it generate any money? I would think that the know-how claims, if I'm understanding right, aren't those the claims about whether or not the 83 changed? I would think, forget about whether or not there was know-how and is it entitled to money, I would think that the main issue to be decided was was he governed by a policy that came into effect after he left. That's right. That's fair. That would be an extremely important issue, which we don't think is much of an issue at all because it seems obvious, even when you just say it, that a policy that was unilaterally adopted five years after CREA had long left City of Hope and was working at Genentech has no application to Dr. CREA and his claims. So for those reasons, these are three separate claims. We haven't mentioned very key cases of this court that are quite pertinent. The U.S. valves case, which the district court relied on below, and that was a case too where there was one breach of contract claim, but there were two types of valves that were at issue, one of which didn't present a federal question because there was agreement as to whether it was covered by the contract, but one of which, the sliding ring valve, was hotly disputed as to whether it infringed. And because you couldn't adjudicate the entirety of the plaintiff's claim in the U.S. valves case without talking about the sliding ring valves and whether they infringed, it raised a federal question. Same so too with the recent case of Davis by this court where it was one claim for malpractice. During discovery, it turned out that part of the malpractice claim was shoddy work in connection with U.S. patents. The rest of it had to do with alleged malpractice with respect to PCT patents, which did not raise a federal question. And there the court had no problem in considering it two separate claims and not several different theories underlying the same claim. And for all the reasons that we've stated here, the same analysis should apply, especially given the undisputed fact. There are many other facts in the record that show that the City of Hope Genentech relationship was all about the Riggs-Itacura patents. And those are in our briefs. They're the interrogatories exchanged by City of Hope and Genentech. During that case, there's the pre-suit letter by Sean Johnston that this only Riggs-Itacura patents. He was an executive from Genentech, and he said the relevant patents are the Riggs-Itacura patents. There's the testimony of Genentech. We were not friendly with Genentech at that trial, but the Genentech witnesses at the trial made clear it was all about the City of Hope Riggs-Itacura patents. And the district court gave CREA the opportunity to take jurisdictional discovery for several months to determine whether there was any state law basis for this claim, and there is still no evidence in the record that there is any basis whatsoever. So those are the jurisdictional issues. I think that the substantive law issues are very well... the summary judgment issues are very well set forth in the brief. I won't belabor them, other to make the point that there are two separate and independent grounds for summary judgment. There's the statute of limitations based, among other things, on inquiry notice, which truly, for a claim that's 25 years old when it was brought, is not at all surprising. And there are dramatic facts that clearly give rise to inquiry notice, including his knowledge that the Riggs-Itacura patents issued in the 1980s. He was angry. He was upset. He knew he had suffered some kind of harm, be it reputational or otherwise, and he didn't do anything to follow up on that claim at all. And that's admissions, undisputed facts, based on what CREA itself admits to have known. The other ground, of course, is that there was no contract on which CREA can claim a right to recover, given that CREA's theory is that there was an implied impact contract that he never knew about and didn't know about for 25 years, and basic contract law says you need mutual consent. And the California cases like Gu's are very clear that just a policy floating out there doesn't give you a contract right. You need at least knowledge and reliance. So, respectfully, we think that the substantive issues are not a close question and that the jurisdictional issues are absolutely correctly decided by the district court, by the application of well-established law under Christensen and this court's, the progeny in this court and elsewhere. By the way, to end where I began, the other cases that also examine the substance of a sham claim include the Ninth Circuit's case of Young and Bright v. Bechtel, where, again, they had to look beyond. In this case, the court relied solely on the pleadings and matters he could take judicial notice of, and CREA agreed that he could take judicial notice of the 1972 policy, the 1983 policy, the patents, the filing dates, and the like, and that's on the record that CREA made that agreement. But in Bright v. Bechtel and Young, the court went beyond the pleadings, looked at the evidence, and said, there is no way, although you say it's a federal claim, a state law claim, there is no state law claim here. In Bright v. Bechtel, the plaintiff, unlike CREA here, was actually willing to disclaim his federal court claim, and the court said, that doesn't get you out of state court. Excuse me, that doesn't get you out of federal court and into state court. And that was in a franchise tax board. That's correct. Where they looked beyond the complaint and said, in reality, your grievance was all about federal law. Thank you. Thank you, Mr. Lippner. Mr. Iorio, you have a little time left. How much time do I have? You should be showing a minute and five seconds. A minute and five. Okay. We'll be quick. The two cases that counsel cited, Davis v. Brous-McDowell and U.S. Vows v. Dre, they're addressed in our reply brief at pages 5 to 8 and 9 to 10. The difference is, in those cases, there were different facts supporting the alternative theory. For example, in Davis, there was one set up as a legal malpractice claim, one related to U.S. patent applications, one related to a PCP. Different facts, and one of which involves patent law, that subject jurisdiction is present. Here, the work is the DNA synthesis project. It's the same work, whether it resulted in patents, of Riggs and Itakura, Krayev, reagent patents, or know-how and improved techniques. Same operative set of facts. HIF bio governs, and there is no subject matter jurisdiction. One point with respect to the licenses here. They're all in the record, Your Honor, at Eli Lilly, Kabi Jen, Hoffman LaRoche, and Toa, at 835.85 to 37.48. Each of those licenses allows Genentech to produce and sub-license different products in different times to different licensees. And this applies to the statute of limitations, too. Under the Armstrong petroleum case, where you have to look at each situation differently in a breach of contract, you have a continuing breach case, and you don't look to the earliest possible breach, but you look at each set of revenues by themselves. Is Krayev entitled to compensation, or isn't he? And you don't look at the first one and say, well, that dictates everything else, because you have to look at the contribution of Krayev's work to the stream of revenue that Genentech and City of Hope received. Thank you. That's Armstrong. Thank you, Mr. Your Honor. Thank you, Your Honor. The case is submitted. We thank both counsel. Thank you.